UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ERNEST J. FRANCESCHI, JR., | Case No.: 2:10-cv-00205-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss–#8) |
| HARRAH'S ENTERTAINMENT, INC., a Delaware corporation;  HARRAH'S OPERATING COMPANY, INC., a Nevada corporation, | |
| Defendants. | |

Before the Court is Defendants Harrah's Entertainment, Inc. and Harrah's Operating Company, Inc.'s **Motion to Dismiss** (#8), filed June 11, 2010.  The Court has also considered Plaintiff Ernest J. Franceschi Jr.'s Opposition (#11), filed June 23, 2010, and Defendants' Reply (#12), filed July 1, 2010.

## BACKGROUND

This dispute arises from Franceschi's claim that he suffered injuries as a result of Defendants' deceptive advertisements.  (*See generally*, Dkt. #1, Compl.)  The following account summarizes his allegations.  Franceschi claims that Defendants engage in substantial marketing

1   efforts in California with the hope of inducing California residents to patronize Defendants'
2   Nevada casinos.  These marketing efforts include television, newspaper, and radio advertisements,
3   placement of billboards on California roads, as well as direct solicitation by mail, e-mail, and
4   telephone.  (*Id.* ¶ 11.)  Franceschi asserts that "Defendants' advertising, marketing, and
5   promotional activities in the state of California, are calculated to create a message which implies
6   that all California players are welcome to come to Defendants' casinos in Nevada and partake in
7   the gaming services offered by Defendants."  (*Id.* ¶ 21.)  However, Defendants do not intend to
8   offer their services as advertised because they have an undisclosed policy and practice of barring
9   "skillful" blackjack players[1] from playing blackjack, ejecting them from the premises under threat
10  of arrest, photographing the player without his consent, and placing the picture in a shared
11  database in order to alert non-Harrah's casinos to similarly exclude the player.  (*Id.* ¶ 14.)
12  Franceschi claims that he was victimized by these practices on five separate occasions between
13  2005 and 2006 when Defendants permanently barred him from playing blackjack at multiple
14  Nevada casinos, including Harrah's Las Vegas, Caesar's Palace, Paris Las Vegas, the Rio All-
15  Suites Hotel, and Harrah's Reno.  (*Id.* ¶¶ 24, 34.)
16              Franceschi originally filed his action in the California Superior Court for the
17  County of Los Angeles on November 21, 2006.  (Dkt. #8, Mot. Ex. 1, Compl.)  However, the
18  Honorable Luis A. Lavin, Superior Court Judge, stayed that action after weighing several factors
19  related to the equitable doctrine of *forum non conveniens* and finding that Franceschi's action
20  would be more appropriate in Nevada.  (*Id.* Ex. 2, Cal. Sup. Ct. Order, Dec. 30, 2009.)  On
21  February 16, 2010, Franceschi initiated the current suit in this Court.  Franceschi alleges the
22  following causes of action: (1) violation of the California Consumer Legal Remedies Act, Cal.

---

[1] The individuals which Franceschi describes as "skillful" blackjack players are more commonly referred to as "card counters."  *Chen v. Nevada State Gaming Control Bd.*, 994 P.2d 1151, 1152 n.1 (Nev. 2000) (describing the practice of "card counting" as a mathematical process which enables the player to achieve better odds when playing blackjack); *see also Uston v. Hilton Hotels Corp*, 448 F. Supp. 116 (D. Nev. 1978) ("a card counter is a person that attempts to know every card both in and out of the deck, thereby enhancing his chances of placing a favorable wager.").

AO 72
(Rev. 8/82)

Civ. Code § 1770, *et. seq.*; (2) injunctive relief against Defendants for violation of the California Unfair Practices Act (also known as the Unfair Competition Law), Cal. Bus. & Prof. Code § 17200, *et seq.*; and (3) common law fraud and deceit.  Defendants now ask the Court to dismiss for lack of subject matter jurisdiction.  For the reasons discussed below, the Court denies Defendants' motion but dismisses this case *sua sponte* for failure to state a valid claim.

## DISCUSSION

### I. Harrah's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for lack of subject matter jurisdiction.  Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008).  Although the defendant is the moving party in a Rule 12(b)(1) motion to dismiss, the plaintiff is the party invoking the court's jurisdiction.  As a result, the plaintiff bears the burden of proving that the case is properly in federal court.  *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001).

To establish subject matter jurisdiction pursuant to diversity of citizenship, the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties and (2) an amount in controversy exceeding $75,000.  28 U.S.C. § 1332(a).  The amount in controversy is determined by the amount at stake in the underlying litigation.  *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005).  In determining the amount in controversy, a district court may consider the amount of compensatory and punitive damages stated in plaintiff's complaint.  *Meisel v. Allstate Indem. Co.*, 357 F. Supp. 2d 1222, 1225 (E.D. Cal. 2005) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347–48 (1977)).  Where a plaintiff seeks equitable relief, the Ninth Circuit has held that the amount in controversy is satisfied where either plaintiff can gain or defendant can lose the jurisdictional amount.  *In re Ford Motor Co./Citibank (So. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) (holding that the amount in controversy is

satisfied when a party's potential cost of compliance with an injunction exceeded the jurisdictional amount).

Defendants argues that this Court lacks subject matter jurisdiction because Franceschi fails to show a $75,000 amount in controversy for diversity jurisdiction. In his complaint, Franceschi seeks economic, emotional, and punitive damages—all plead in excess of $75,000—and also seeks an award of attorneys fees. (Dkt. #1, Compl. ¶¶ 5, 28, 39, 47, 48.) In addition to damages, Franceschi requests injunctive relief to either enjoin Defendants from engaging in deceptive advertising in California or require Defendants to explicitly disclose their alleged practice of excluding skillful blackjack players in their advertisements. (*Id.* ¶¶ 26, 27, 31, 35, 36.) Specifically, Franceschi asks the Court to require Defendants to print a lengthy disclosure to consumers on "all California public advertisement, mailings, promotions, solicitations, and marketing campaigns, of any kind . . . ." (*Id.* ¶ 27.) Defendants assert in their motion that Franceschi cannot establish $75,000 in damages by competent proof, therefore, it is legally impossible for Franceschi to satisfy the amount in controversy requirement.

Even if the Court were to scrutinize Franceschi's prayer for relief on economic, emotional, and punitive damages and find it lacking, Defendants fail to address the potential cost of compliance with an injunction. The Court can easily presume that Defendants' cost of redesigning its advertising campaigns and amending all marketing materials to include a lengthy disclosure—plus any additional public relations costs Defendants may incur as a result—would easily exceed $75,000. The Court therefore finds that Franceschi has met the $75,000 amount in controversy requirement for diversity jurisdiction.

## II. Failure to State a Valid Claim

Although Defendants' motion did not address the validity of Franceschi's claims in their motion, the Court finds that question ripe for adjudication. A district court may dismiss claims *sua sponte* pursuant to Rule 12(b)(6), without notice, where a claimant could not possibly obtain relief. *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (citing *Wong v.*

*Bell*, 642 F.2d 359, 362 (9th Cir. 1981)). In the interest of judicial efficiency and because these claims cannot be corrected by amendment, the Court will address Franceschi's claims under Rule 12(b)(6).

A court may dismiss a Franceschi's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562. "Factual allegations must be enough to rise above the speculative level." *Id.* at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 1949. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the Franceschi's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.*
/

(internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, Franceschi's complaint must be dismissed. *Twombly*, 550 U.S. at 570.

### A. California Statutory Claims

Franceschi alleges two similar claims under California law. First, he alleges Defendants violated the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, which prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Specifically, Franceschi asserts that Defendants violated CLRA by "[a]dvertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9). Second, he claims Defendants violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, which similarly proscribes unfair or deceptive business practices and false or misleading advertisements. Whether a business practice is deceptive will usually present a question of fact and therefore dismissal of a claim for failure to state a deceptive practice will be appropriate only in "the rare case." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). Notwithstanding, decisions dismissing these types of claims have been upheld on appeal. *See e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995). For the foregoing reasons, the Court concludes that Franceschi's CLRA and UCL claims fall into the rare category in which dismissal is appropriate.

### 1. Gaming Establishments' Right to Exclude

Under California law, an alleged unfair or deceptive business practice cannot be the basis of a cause of action if the conduct has been deemed lawful. *Byars v. SCME Mortgage Bankers, Inc.*, 135 Cal. Rptr. 2d 796, 805 (Cal. Ct. App. 2003) (citation omitted). The California Supreme Court concluded, "a plaintiff may not bring an action under the unfair competition law if some other provision bars it." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 542 (Cal. 1999). This inhibits plaintiffs' ability to "plead around" an "absolute bar to relief" simply "by recasting his cause of action as one for unfair competition." *Id.* at 541. "In other words, courts may not use the unfair competition law to condemn actions the Legislature permits."

*Id.* at 541. The Court finds that Franceschi fails to state CLRA and UCL claims because his allegations amount to nothing more than a clever attempt to plead around the statutory bars to relief for exclusion of card counters.

At common law, a proprietor of a privately-owned entertainment establishment may exclude whomever he wishes for any reason, or for no reason whatsoever. *Marrone v. Wash. Jockey Club*, 227 U.S. 633, 636 (1912). In addition, Nevada and California courts have long since established that the "right to exclude others" is a "fundamental element of private property ownership." *S.O.C., Inc. v. Mirage Casino-Hotel*, 23 P.3d 243, 249 (Nev. 2001); *Allred v. Harris*, 18 Cal. Rptr. 2d 530, 533 (Cal. Ct. App. 1993). The same fundamental rights of private property ownership also extend to gaming establishments.[2] As such, Nevada casinos are under no duty to admit all persons—including card counters—to play blackjack or any other game. *See, e.g.*, *Uston v. Nev. Gaming Comm'n*, 809 P.2d 52 (Nev. 1987) (refusing to hear plaintiff's appeal after a district court dismissed his suit based on his allegations of illegal exclusion from Nevada casinos because he was a card counter); *Donovan v. Grand Victoria Casino & Resort, L.P.*, 934 N.E.2d 1111, 1115–16 (Ind. 2010) (agreeing with this Court's holding in *Uston v. Hilton Hotels Corp*, 448 F. Supp. 116 (D. Nev. 1978), and finding that the overwhelming weight of authority emanating from gaming jurisdictions rejects the notion that state gaming regulation preempts a casino's right to arbitrarily exclude patrons); *see also* NRS § 463.151.

Although the practice of card counting is not cheating or illegal, Nevada casinos may exclude suspected card counters at their discretion. *Chen v. Nev. State Gaming Control Bd.*, 994 P.2d 1151, 1153 (Nev. 2000). In *Uston v. Hilton Hotels Corp*, this Court acknowledged that NRS § 463.151 requires gaming establishments to exclude certain persons who are "named on a

---

[2] *See generally*, Am. Jur. 2d *Gambling* § 163 (2010); Lionel Sawyer & Collins, *Nevada Gaming Law*, 312, 315–16 (3d ed. 2000); I. Nelson Rose. & Robert A. Loeb, *Blackjack and the Law* 17–19 (1998); Anthony Cabot & Robert Hannum, *Gaming Law and Technology: Advantage Play and Commercial Casinos*, 74 Miss. L.J. 681, 709–10 (2005); Tom Julian, *Exclusions and Countermeasures: Do Card Counters Have a Right to Play?*, 9 Gam. L. Rev. 165, 167 (2005).

7

1  list compiled by the Nevada Gaming Commission for various reasons, one of which is not card
2  counting." 448 F. Supp. at 119. Nevertheless, Nevada gaming laws do not obligate casinos to
3  admit persons thought to be card counters. *Id.* at 118–19. The Nevada Supreme Court has further
4  recognized that "gaming establishments have the unquestioned right to protect themselves against
5  so-called 'card counters'," and they may do so by excluding a card counter from the premises.
6  *Chen*, 994 P.2d at 1153.

7        Clear precedent demonstrates that the common law right of exclusion remains an
8  important part of a casino's business judgment concerning card counters. In years past, card
9  counters have unsuccessfully tested several legal theories to redress their exclusion from casinos:
10 violation of due process and equal protection, breach of contract, fraud, misrepresentation,
11 racketeering, conspiracy, and the like. *See, e.g.*, *Doug Grant, Inc. v. Greate Bay Casino Corp.*,
12 232 F.3d 173 (3d Cir. 2000) (finding that exclusion of card counters did not violate equal
13 protection, due process, or federal RICO statutes); *Ziglin v. Players MH, L.P.*, 36 S.W.3d 786
14 (Mo. Ct. App. 2001) (affirming summary judgment against a card counter's claims, which
15 included claims for breach of contract concerning a casino's advertisements and fraudulent
16 misrepresentation). Although Franceschi's claims are slightly different because he alleges that
17 Defendants advertised services without the intent to sell to card counters in violation of CLRA and
18 UCL, he ultimately seeks redress for Defendants' exercise of their right to exclude Franceschi
19 from their casinos—a right which legislative and gaming regulatory bodies have well-established
20 and numerous courts have long-recognized. If the Court were to allow Franceschi's CLRA and
21 UCL claims for unfair and deceptive practices to proceed, it would be allowing him to "plead
22 around" an "absolute bar to relief" simply "by recasting his cause of action as one for unfair
23 competition." *Cel-Tech*, 973 P.2d at 541. Such a decision would be erroneous and contrary to
24 law because Defendants have a right to exclude card counters. Accordingly, the Court concludes
25 that Franceschi fails to state valid CLRA or UCL claims.
26 /

AO 72
(Rev. 8/82)

### 2. The Reasonable Consumer Test

Even if Franceschi's CLRA and UCL claims survived Defendants' right to exclude, his claims fail to satisfy the "reasonable consumer" test that controls such claims. The reasonable consumer test requires a Franceschi to show that members of the public are "likely to be deceived." *Williams*, 552 F.3d at 938. To find that defendant's statements are "likely" to deceive a reasonable consumer, deception must be probable, not just possible. *Id*. Under the reasonable consumer test, a plaintiff has the burden to establish that a defendant engaged in a business practice likely to deceive the reasonable consumer to whom the practice was directed. *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 310 (Cal. Ct. App. 1999). A plaintiff must also show that "a person of ordinary intelligence" is likely to be deceived, not a small segment of unwary consumers or vulnerable groups such as the elderly, minors, or mentally disadvantaged. *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) (citing *Haskell v. Time. Inc.*, 857 F. Supp. 1392, 1398 (E.D. Cal. 1994)); *see also State Bd. of Funeral Directors*, 76 Cal. Rptr. 832, 834–35 (Cal. Ct. App. 1969) (applying standard of "what a person of ordinary intelligence" would conclude in a false advertising case); *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 557 (9th Cir. 1960) (applying standard of "the eye of the ordinary purchaser" to the interpretation of unfair competition and misleading advertising under California law).

Franceschi's CLRA and UCL claims fail under the reasonable consumer test because card counters like himself cannot be categorized as reasonable consumers or ordinary purchasers who are likely to be deceived. In fact, an allegation of that nature would defy logic. Skilled card counters employ their intellect and memory to develop the advanced ability necessary to track a casino dealer's cards and adjust their betting strategy. In doing so, card counters can overcome a casino's mathematical advantage and increase their odds of winning. Mastery of this complex practice clearly demonstrates natural aptitude and superior reasoning—and it is precisely because of these qualities that card counters can hardly be considered ordinary consumers who are likely to be deceived by Defendants' advertisements. Moreover, the level of skill required in this

1  practice ensures that card counters do not comprise a sizeable part of the population.  Thus,
2  Franceschi cannot show that card counters amount to more than a small segment of expert
3  blackjack players—not the general body of reasonable consumers who the CLRA and UCL
4  protect.  In addition, Franceschi's complaint fails to allege that Defendants' directed their
5  advertisements towards card counters.  Once again, such an allegation would be absurd.  A card
6  counter's principal goal is to eliminate a casino's mathematical advantage.  The Court rejects the
7  notion that a casino would target its advertisements towards the very patrons which they also
8  exclude.  The Court therefore finds that under the reasonable consumer test, card counters like
9  Franceschi are not likely to be deceived by Defendants' advertisements.  Accordingly, the Court
10  dismisses Franceschi's CLRA and UCL claims.

11  **B.    Common Law Fraud and Deceit**

12  In California, the elements of fraud which give rise to the tort action for deceit are
13  "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of
14  falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)
15  resulting damage." *City Solutions, Inc. v. Clear Channel Comm'n*, 365 F.3d 835, 839 (9th Cir.
16  2004) (quoting *Lazar v. Sup. Ct.*, 909 P.2d 981, 984–85 (Cal. 1996)).  Furthermore, to establish
17  fraud through nondisclosure or concealment of facts, the defendant must have been under a duty to
18  disclose some fact to the plaintiff.  *Hahn v. Mirda*, 54 Cal. Rptr. 3d 527, 530 (Cal. Ct. App. 2007).
19  Generally, silence alone, as distinguished from misleading half-truth or partial disclosures, is not
20  actionable.  *Wiechmann Eng'rs v. California*, 107 Cal. Rptr. 529, 535 (Cal. Ct. App. 1973).  Thus,
21  in the absence of a confidential relationship between the parties, or other special circumstances
22  raising a duty to speak or act, mere silence or inaction will not support the charge of fraudulent
23  concealment.  *Buckland v. Threshold Enter., Ltd.*, 66 Cal. Rptr. 3d 543, 548 (Cal. Ct. App. 2007).
24  Franceschi's common law fraud and deceit claim fail as a matter of law because
25  Defendants did not owe him any duty to disclose that card counters may be excluded from playing
26  blackjack.  The parties were not engaged in any kind of special relationship that would support

AO 72
(Rev. 8/82)

Franceschi's assertion that Defendants fraudulently concealed their practice of excluding card counters.  *Accord, Ziglin*, 36 S.W.3d at 791 (affirming summary judgment against a fraudulent misrepresentation claim because card counter faieled show casino had a legal duty to disclose that card counters may be excluded from playing blackjack).  Even if Franceschi could establish a duty to disclose, his claim would not satisfy the remaining elements necessary for a valid fraud claim.  As the Court previously explained, Franceschi and other card counters like him, are not ordinary consumers who are likely to be deceived.  Thus, the Court doubts that a card counter could ever demonstrate justifiable reliance to state a valid fraud claim.  The Court therefore dismisses Franceschi's common law fraud and deceit claim.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#8) is DENIED.

IT IS FURTHER ORDERED that Franceschi's complaint is dismissed in its entirety.  The Clerk of the Court is directed to close the case.

Dated: January 3, 2011.

_____
ROGER L. HUNT
Chief United States District Judge

11